**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NATIONAL PHYSIQUE COMMITTEE
OF THE USA, INC. d/b/a NPC; and
JAMES B. MANION, an individual,

                    Plaintiffs,

      v.

TIMOTHY LEE THOMPSON, an
individual; and NSPIRE PHYSIQUE
CHAMPIONSHIP LEAGUE LLC d/b/a
NPC GLOBAL,

                    Defendants.

Civil Action No. _____

**ELECTRONICALLY FILED**

### COMPLAINT FOR INJUNCTIVE RELIEF

      Plaintiffs National Physique Committee of the USA, Inc. d/b/a NPC ("NPC" or "National

Physique Committee") and James B. Manion ("Mr. Manion"), by and through their undersigned

counsel, assert as follows for their Complaint for Injunctive Relief against Defendants Timothy

Lee Thompson ("Mr. Thompson") and Nspire Physique Championship League LLC d/b/a NPC

Global ("NPC Global"):

### INTRODUCTION

      1.     This case involves a former longtime NPC Board of Governors member, officer

and promoter (i.e., Mr. Thompson) who recently formed his own company (i.e., NPC Global) for

the sole purpose of directly competing with NPC in the industry of organizing, promoting,

regulating and sanctioning amateur bodybuilding, physique and fitness competitions within the

United States.

      2.     The manner in which Mr. Thompson has gone about forming and promoting NPC

Global to directly compete against NPC is sinister, outrageous and unlawful.

3.      For example, Mr. Thompson has deliberately incorporated the acronym "NPC" into the name of his new, competing company despite the fact that he knows or reasonably should know that NPC registered NPC® as a service mark over twenty-five years ago and has used it consistently for over thirty years to, among other things, organize, promote, regulate and sanction amateur bodybuilding, physique and fitness competitions throughout the United States.

4.      Indeed, the registered service mark NPC® is to amateur bodybuilding, physique and fitness competitions what the registered trademarks and service marks NFL®, NHL®, NBA® and MLB® are to professional football, hockey, basketball and baseball within the United States.

5.      Mr. Thompson and/or NPC Global (collectively, the "Defendants") have also recently launched and continue to operate the website "npcglobal.org", which not only infringes upon the registered NPC® service mark but also asks visitors (most of whom are likely already NPC members) to "JOIN THE MOVEMENT" by registering their emails to receive NPC Global propaganda.

6.      Furthermore, Mr. Thompson and/or NPC Global is/are maintaining and actively using social media accounts such as "Thompson Muscle Contest/NPCTEXAS" on Facebook, "NPCGLOBAL" on Twitter, "@NPCTEXAS" on Twitter, and "@npcglobalofficial" on Instagram to discuss and promote NPC Global.

7.      Mr. Thompson's and/or NPC Global's use of the registered service mark NPC® in or on website domain names, websites, and social media accounts is no mere coincidence.

8.      Rather, Mr. Thompson and/or NPC Global clearly want to pass themselves off as still being affiliated with NPC and/or reap the economic benefits of the extraordinary recognition the NPC name carries in the amateur bodybuilding, physique and fitness industry.

2

9.      Sadly, as more fully set forth below, it is clear that Mr. Thompson plotted these sorts of intentional, tortious actions with malice aforethought during his longtime tenure as an officer of NPC and a member of NPC's Board of Governors.  Thus, aside from engaging in trademark infringement, dilution, unlawful competition and cybersquatting, Mr. Thompson has also breached his fiduciary duties to NPC.

10.     These tortious actions have not only caused incredible confusion amongst NPC members, customers and vendors, but have also turned the world of amateur bodybuilding, physique and fitness competitions on its head because of Mr. Thompson's longtime association with NPC as a member of its Board of Governors as well as one of its officers and promoters.

11.     NPC and Mr. Manion have already politely asked Mr. Thompson to immediately cease and desist from engaging in these malicious and unlawful activities, but he refuses.

12.     NPC and Mr. Manion have thus been forced to bring this civil action against Mr. Thompson and NPC Global for injunctive relief as well as money damages and attorneys' fees arising from (a) Defendants' activities constituting trademark infringement, unfair competition, and cybersquatting under the Lanham Act and/or common law; (b) Defendants' unjust enrichment as a result of the tortious conduct described hereinabove; (c) Defendants' violations of both state and federal anti-dilution law; and (d) Mr. Thompson's obvious breaches of his fiduciary duties to NPC.

**PARTIES**

13.     Plaintiff NPC is a not-for-profit Ohio corporation which has been headquartered in and transacting business out of Pittsburgh, Pennsylvania since approximately 1985.  NPC's offices are located at 212 9th Street, Suite 500, Pittsburgh, Pennsylvania 15222.

3

14.     Plaintiff James B. Manion is an adult individual with a mailing address of P.O. Box 442, Carnegie, Pennsylvania 15106.  Mr. Manion is a founder and President of NPC.

15.     Upon information and belief, Defendant NPC Global is a Texas limited liability company having its principal place of business at 2430 Victory Park Lane, Dallas, Texas 75219.

16.     Defendant Timothy Lee Thompson is an adult individual with a mailing address of 2430 Victory Park Lane, Dallas, Texas 75219.  Upon information and belief, Mr. Thompson formed and founded NPC Global and serves as an owner, operator, manager, officer and/or director of NPC Global.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction over this dispute under the Lanham Act pursuant to 28 U.S.C. § 1338.  The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and/or because one or more of the Defendants are subject to personal jurisdiction within this judicial district.

19.     Indeed, Defendants have, among other things, engaged in unlawful conduct by maintaining and operating one or more websites and social media accounts which infringe the NPC® service mark and are directed at current or potential NPC members, customers and/or vendors who reside in this judicial district.

20.     Furthermore, during his longtime tenure as an NPC promoter and Board of Governors member, Mr. Thompson engaged in continuous and systematic contacts with this judicial district because NPC is headquartered within this judicial district.

**FACTUAL BACKGROUND**

**Historical Overview of the NPC and its President, James B. Manion**

21.     Until the passage of the Amateur Sports Act of 1978, 36 U.S.C. § 220501 *et seq.* (the "Amateur Sports Act"), the Amateur Athletic Union (the "AAU") was the governing body for nearly all amateur sports in the United States.

22.     Each amateur sport which fell under the purview of the AAU had its own Committee, such as a Swimming Committee, Track and Field Committee, etc.

23.     During the 1970's and early 1980's, Mr. Manion served as President of the AAU's Physique Committee.

24.     In March of 1978, with the consent of the AAU, Mr. Manion founded and incorporated within the state of Ohio "The National Physique Committee of the AAU, Inc." (the "AAU Corporation").

25.     The purpose of the AAU Corporation, of which Mr. Manion served as President, was to promote, govern and engage in activities related to amateur bodybuilding, fitness and physique competitions throughout the United States.

26.     In approximately June of 1981, upon the request and consent of the AAU, Mr. Manion changed the name of the AAU Corporation to the name of one of the Plaintiffs in this case, i.e., "National Physique Committee of the U.S.A., Inc."

27.     This name change was effectuated through the filing of an amendment to the Articles of Incorporation of the AAU Corporation as opposed to filing new articles of incorporation in Ohio or any other state.

28.     With the AAU's full knowledge and consent, NPC separated itself from the AAU and became its own, independent organization led by Mr. Manion as its President.

29.     The purpose behind NPC, much like that of the AAU Corporation, was and remains to promote, govern and engage in activities related to amateur bodybuilding, fitness and physique competitions throughout the United States.

30.     From these humble beginnings, and through the vision, leadership and hard work of Mr. Manion and others similarly dedicated, NPC has grown over the course of more than three decades into the premier amateur bodybuilding, fitness and physique organization in the world.

31.     NPC currently has over 30,000 members across the United States, including no less than approximately 1,000 members within the Commonwealth of Pennsylvania.

32.     Those members regularly compete in NPC sanctioned and sponsored amateur bodybuilding, fitness and physique competitions throughout the United States.

33.     For over three decades, NPC has been the leading regulator, organizer, promoter and sanctioning body of amateur bodybuilding, fitness and physique competitions throughout the United States.

34.     On a yearly basis, NPC regulates, organizes, promotes and sanctions approximately 300 bodybuilding, fitness and/or physique competitions throughout the United States.

35.     Of those approximate 300 competitions, around 10 per year are held in Pennsylvania.

36.     Of those approximate 10 competitions, roughly 4 per year are held in Pittsburgh, Pennsylvania.

37.     Inasmuch as NPC has been the leader in regulating, organizing, promoting and sanctioning amateur bodybuilding, fitness and physique competitions for over three decades, the name "National Physique Committee" and the registered service mark by which it transacts business, NPC®, are well-known and famous throughout the amateur and professional bodybuilding, fitness and physique industry.

38.     Upon information and belief, the overwhelming majority (if not all) of amateur bodybuilding, fitness or physique competitors who hear or see "NPC" will immediately associate it with the National Physique Committee.

**Overview of NPC's Organizational Structure and
Mr. Thompson's Former, Significant Role Within That Structure**

39.     NPC maintains a National Office located in Pittsburgh, eight Regional Zone Offices located throughout the United States, and at least one individual District Office located in each of the fifty states.

40.     At all relevant times, Mr. Thompson was aware that NPC's National Office is located in Pittsburgh, Pennsylvania.

41.     The National Office is headed by Mr. Manion, the Regional Zone Offices are headed by Zone Chairpersons, and the District Offices are headed by District Chairpersons.

42.     NPC is governed and controlled by a Board of Trustees as well as a Board of Governors.

43.     The Board of Governors holds all of the powers of the NPC pursuant to NPC's Code of Regulations.

44.     NPC's Board of Governors is comprised of, *inter alia*, each District Chairperson.

45.     Each District Chairperson is also an NPC officer pursuant to the NPC's Code of Regulations.

46.     District Chairpersons, on behalf of NPC, are responsible for, among other things, encouraging the promotion of the sport within their Districts, preparing a schedule of competitions to be held within their Districts, obtaining approval of competitions within their Districts from NPC, and ensuring that competition promoters comply with the standards for NPC promotional materials, staging, lighting, rules and regulations.

47.     In approximately 2006, Mr. Thompson was named as NPC's District Chairperson for the state of Texas.

48.     It is well known throughout the amateur and professional bodybuilding, fitness and physique industry that Mr. Thompson has been affiliated for many years with NPC as a District Chairperson.

49.     As an NPC District Chairperson and thus an NPC officer and Board of Governors member, Mr. Thompson owed certain fiduciary duties to NPC, including, but not necessarily limited to, a duty of loyalty, a duty of good faith, a duty to refrain from self-dealing, and a duty of disclosure.

50.     In addition to his role as a member of NPC's Board of Governors, since no later than 2006 Mr. Thompson has served as a promoter of numerous NPC competitions.

51.     It is well known throughout the amateur and professional bodybuilding, fitness and physique industry that Mr. Thompson has been affiliated for many years with NPC as a promoter of NPC competitions.

52.     While serving as a District Chairperson and promoter of NPC competitions, Mr. Thompson frequently made phone calls and sent emails to NPC's National Office in Pittsburgh, Pennsylvania for purposes of transacting and/or engaging in NPC business.

53.     Said calls and emails were frequently made and sent to, *inter alia*, Mr. Manion and other members of NPC's executive staff for purposes of transacting and/or engaging in NPC business.

54.     While serving as a District Chairperson and promoter of NPC competitions, Mr. Thompson also made a number of visits to Pittsburgh and other locations in Pennsylvania to transact and/or engage in NPC business.

55.     While serving as a promoter of NPC competitions, Mr. Thompson generated tens of thousands of dollars for himself because NPC does not share in the profits or losses from said competitions.  Rather, only the promoters (such as Mr. Thompson) share in the profits or losses from competitions.  NPC generates the bulk of its revenues only from membership dues and competition sanction fees.

56.     While serving as a promoter of NPC competitions, NPC (through its National Office in Pittsburgh, Pennsylvania) provided Mr. Thompson with general commercial liability insurance which covered activities associated with his promotion, administration, management and production of NPC competitions.  A true and correct copy of one of the many Certificates of Liability Insurance which NPC provided to Mr. Thompson during the last approximate ten (10) years is attached hereto as **Exhibit A** and incorporated herein by reference.

57.     Mr. Thompson always accepted such general commercial liability insurance coverage for each of the competitions he promoted.

58.     In addition to serving as an NPC officer, Board of Governors member and promoter, Mr. Thompson also frequently served over the last approximate ten years as a judge at NPC-sponsored competitions throughout the United States.

59.     It is well known throughout the amateur and professional bodybuilding, fitness and physique industry that Mr. Thompson has been affiliated for many years with NPC as a judge at NPC-sponsored competitions.

60.     As a result of Mr. Thompson's longtime role as an NPC District Chairperson, promoter and judge, his name is inextricably linked to the National Physique Committee and vice versa.

### Overview of NPC's Valuable Trademarks and Service Marks

61.     By the late 1980's, NPC recognized that it had to take steps to protect its intellectual property as well as the tremendous goodwill and brand name recognition that NPC worked hard to foster and develop in the amateur bodybuilding, physique and fitness industry.

62.     As a result, NPC filed for, received and began maintaining the following federal trademark and service mark registrations on the following dates:

| Marks | Registration Number | Issue Date |
|---|---|---|
|  | 1,587,169 | March 13, 1990 |
| NATIONAL PHYSIQUE COMMITTEE OF THE U.S.A. | 1,590,982 | April 10, 1990 |
| NPC | 1,598,951 | May 29, 1990 |
| JUNIOR U.S.A. BODYBUILDING CHAMPIONSHIPS | 1,599,945 | June 5, 1990 |
| U.S.A. BODYBUILDING CHAMPIONSHIPS | 1,599,946 | June 5, 1990 |
| JR. NATIONAL BODYBUILDING CHAMPIONSHIPS | 1,602,919 | June 19, 1990 |
| NATIONAL BODYBUILDING CHAMPIONSHIPS | 1,602,920 | June 19, 1990 |
| NATIONAL PHYSIQUE COMMITTEE OF THE U.S.A. | 1,622,933 | November 13, 1990 |
| USA BODY BUILDING | 1,806,178 | November 23, 1993 |

| | 1,806,179 | November 23, 1993 |
|---|---|---|

63.     As federal registrations, all of the trademark and service mark registrations listed in Paragraph 61 above are presumed to be valid.

64.     Moreover, because of NPC's continuous and exclusive use of the respective marks, all of these registrations, including U.S. Registration No. 1,598,951 for the mark NPC®, are incontestable and conclusive evidence of the validity of each registered mark, of NPC's ownership of each mark, and of NPC's exclusive right to use each mark.

65.     NPC thereafter assigned the above-referenced trademarks, service marks and registrations, along with the goodwill of the business associated with those marks, to Mr. Manion subject to Mr. Manion granting NPC a perpetual, royalty free, exclusive license to use the marks, including the NPC® mark.

66.     Mr. Manion has granted NPC a perpetual, royalty free, exclusive license to use the marks, including the NPC® mark.

67.     At all relevant times, NPC and Mr. Manion have vigorously protected the above-referenced trademarks and service marks (collectively, the "Marks") because of their enormous value to NPC and/or Mr. Manion.

68.     NPC and Mr. Manion have spent substantial time, monies and resources maintaining, policing, marketing and promoting the Marks as well as the goods sold and services provided thereunder.

69.     As a result of NPC's and Mr. Manion's maintenance, marketing and promotion of the Marks, they have not only acquired further distinctiveness but also substantial and valuable goodwill throughout the United States.

70.     The Marks are well-known and have become famous due to their longevity and popularity.

### Overview of NPC's Strong Internet and Electronic Media Presence Within the United States

71.     In order to meet the needs of its large membership and appropriately transact business in the ever-growing digital age, NPC maintains a strong Internet presence through its website, npcnewsonline.com, and a substantial social media presence through a Facebook page and through Twitter accounts such as "@NPCNewsOnline" and "@NPCUSA".

72.     Currently, NPC has no less than 50,000 Twitter followers and no less than 100,000 Facebook likes.

73.     NPC's strong Internet and social media presence is vital to not only NPC's thousands of members but also NPC's business platform as a whole.

74.     As a result, NPC has spent substantial time, monies and resources cultivating and maintaining its Internet and social media presence throughout the United States.

### Overview of Mr. Thompson's Sudden Departure From NPC and Formation of His Own, Competing Company

75.     On September 16, 2015, and despite repeated verbal assurances to Mr. Manion that he would not flee NPC to form a competing company, Mr. Thompson announced via a video over the Internet that he was leaving NPC and forming his own, competing company named NPC Global.  The videotaped announcement, the contents of which are incorporated herein by reference, can be found at:  https://www.youtube.com/watch?v=tkLouh6523I.[1]

---

[1] Mr. Thompson also posted a written announcement of his departure from NPC and formation of NPC Global at: http://genius.com/Lee-thompson-lee-thompson-announces-npc-global-annotated.  The contents of the written announcement, which largely track the statements in his video announcement, are incorporated herein by reference.

76.     In the video, Mr. Thompson declares (among other things) that "NPC no longer for me stands for the National Physique Committee.  Today, that ends.  It now stands for the Nspire Physique Championships, LLC."

77.     Mr. Thompson further declares in the video that he would continue to use the same social media account that he had used during his long tenure as an officer, Board of Governors member, and promoter with NPC, i.e., "@NPCTEXAS".

78.     Just a few days prior to announcing his departure from NPC, Mr. Thompson also established an "@NPCGLOBAL" social media account on Twitter.

79.     Immediately after the announcement of his departure from NPC to form NPC Global, Mr. Thompson and/or NPC Global launched and began to maintain and operate a website under the domain name npcglobal.org.

80.     Immediately after the announcement of his departure from NPC to form NPC Global, Mr. Thompson and/or NPC Global also launched or significantly updated a website under the domain name npctexas.org.

81.     The npctexas.org website is currently promoting and advertising an NPC-sponsored competition taking place in Irving, Texas on November 7, 2015 ***and*** a competition allegedly being sponsored by NPC Global in Houston, Texas on December 12, 2015.

82.     The npctexas.org website is thus actively (a) passing itself off as somehow being affiliated with and/or sponsored by NPC; and (b) deceiving potential or current NPC members, customers and/or vendors as well as the general public into believing that the npctexas.org website is somehow affiliated with NPC.

83.     Since no later than 2002, NPC has owned and/or used "NPCTEXAS," "NPCTexas," "NPC Texas" and other similar phrases for purposes of, *inter alia*, identifying and promoting NPC within the state of Texas and elsewhere.

84.     NPC continues to own and/or use "NPCTEXAS," "NPCTexas," "NPC Texas" and other similar phrases for purposes of, *inter alia*, identifying and promoting NPC within the state of Texas and elsewhere.

85.     Inasmuch as a portion of the domain names and social media handles associated with the Defendants' above-referenced websites and social media accounts contain the NPC® service mark, and because the websites and social media accounts are dedicated to the promotion and marketing of amateur bodybuilding, physique and fitness competitions (including one sponsored by NPC), the websites and social media accounts are causing an abundance of actual confusion and deception in the marketplace as to whether they are affiliated with, licensed by, and/or operated by NPC.

86.     Furthermore, the npcglobal.org website asks visitors (most of whom are likely already NPC members) to "JOIN THE MOVEMENT" by registering their emails to receive NPC Global propaganda.

87.     Upon information and belief, the above-referenced websites and social media accounts are targeted and directed at current and potential NPC members, customers and/or vendors who reside in this judicial district and elsewhere.

88.     Upon information and belief, current and potential NPC members, customers and/or vendors who reside in this judicial district and elsewhere have visited or followed the above-referenced websites and social media accounts for purposes of attempting to learn about and/or transact business with NPC.

89.     Upon information and belief, current and potential NPC members and customers who reside in this judicial district and elsewhere have registered their emails on the npcglobal.org website for purposes of receiving propaganda from NPC Global.

90.     The same day that Mr. Thompson posted his video announcing his departure from NPC, i.e., September 16, 2015, Mr. Thompson filed a Certificate of Formation for Defendant Nspire Physique Championship League LLC with the Texas Secretary of State.

91.     Mr. Thompson and a gentleman by the name of Jordan Woy are listed within the Certificate of Formation as the "Managers" of Defendant Nspire Physique Championship League LLC.

92.     Since the formation of Defendant Nspire Physique Championship League LLC, Mr. Thompson and/or Defendant Nspire Physique Championship League LLC has/have been transacting or attempting to transact business under the d/b/a name NPC Global

93.     Upon information and belief, Mr. Thompson began plotting his ignominious departure from NPC and the formation of NPC Global months prior to September 16, 2015, while he continued to serve on NPC's Board of Governors.

94.     Upon information and belief, Mr. Thompson began plotting and took affirmative steps to infringe upon NPC's trademarks and service marks and otherwise trade off of the goodwill of NPC months prior to September 16, 2015, while he continued to serve on NPC's Board of Governors.

95.     Upon information and belief, Mr. Thompson began plotting and took affirmative steps to unfairly and unlawfully compete against NPC months prior to September 16, 2015, while he continued to serve on NPC's Board of Governors.

96.     Upon information and belief, Mr. Thompson began plotting and took affirmative steps to organize, sponsor, promote and/or hold NPC Global competitions (such as the one referenced in Paragraph 81 above) which directly compete with NPC competitions, while he continued to serve on NPC's Board of Governors.

97.     Upon information and belief, the Defendants' unauthorized use of the NPC® service mark as well as their maintenance and operation of websites and social media accounts which incorporate the NPC® service mark is willful and intentional.

98.     Upon information and belief, the Defendants are using or intend in the immediate future to use the NPC® service mark on their websites, social media accounts or otherwise to advertise and sell products and/or services which directly compete with the products and/or services advertised and sold by NPC on its website, at NPC competitions, and elsewhere in the marketplace.

99.     Upon information and belief, Defendant NPC Global is a mere alter-ego of Mr. Thompson which he recently formed for the purpose of assisting him in perpetrating and furthering his plot to infringe upon and dilute NPC's and/or Mr. Manion's trademark(s), including, but not necessarily limited to, the NPC® service mark.

100.     Upon information and belief, Defendant NPC Global is a mere alter-ego of Mr. Thompson which he recently formed for the purpose of assisting him in perpetrating and furthering his plot to unfairly and unlawfully compete against NPC.

101.     By way of a letter dated October 2, 2015 from counsel for NPC and Mr. Manion to Mr. Thompson, Mr. Thompson was asked to immediately cease and desist his clearly tortious behavior.

102.     To date, Mr. Thompson and his sham corporation, NPC Global, have refused to cease the unlawful activities described above while continuing to wreak havoc upon and cause confusion within the amateur bodybuilding, physique and fitness industry.

### Irreparable Harm and Other Damages

103.     Unless and until the Defendants are enjoined from unfairly competing against NPC and infringing upon or otherwise using the NPC® trademark, NPC and/or Mr. Manion will continue to be irreparably harmed in at least the following ways:

a) Public confusion as to the source of the Defendants' websites and social media accounts containing the NPC® service mark;

b) Confusion of, and damage to, NPC members, customers and/or vendors who intend to do business with NPC, but are instead provided with products or services that are not NPC products or services or their equivalent;

c) Damage to member, customer, and/or vendor goodwill, trust, and confidence in NPC and a diminution in the satisfaction and expectations of its members, customers and/or vendors;

d) Disturbance of NPC's longtime, valued relationships with its members, customers and/or vendors;

e) Damage to NPC's business reputation;

f) The potential for claims to be filed against NPC as a result of the actions of the Defendants;

g) Dilution of the NPC® service mark; and

h) Dilution of the value of NPC as a whole.

104.    Moreover, if Defendants are permitted to continue to unfairly compete with NPC, this will establish a precedent and potentially encourage others persons or entities to engage in the same conduct, thereby causing an irreparable loss of member, customer and/or vendor goodwill associated with NPC as well as the products and services it sells.

## COUNT I AGAINST BOTH DEFENDANTS

## TRADEMARK INFRINGEMENT UNDER
## SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

105.    NPC and Mr. Manion incorporate each of the assertions contained in the above Paragraphs of the Complaint as if each was set forth herein.

106.    Defendants are willfully and intentionally using the NPC® service mark, including within the websites and social media accounts that they maintain and operate.

107.    Defendants' use of the NPC® service mark is causing confusion, mistake and deception in the marketplace as to whether the products and/or services offered by Defendants are approved, authorized and/or licensed by NPC.

108.    Defendants' use of the NPC® service mark is likely to continue to cause confusion, mistake and deception in the marketplace as to whether the products and/or services offered by Defendants are approved, authorized and/or licensed by NPC.

109.    Defendants' conduct has resulted and will continue to result in the loss of NPC's goodwill, and has caused and will continue to cause NPC and/or Mr. Manion irreparable injury.

110.    Unless enjoined by this Court, Defendants' acts will continue to irreparably damage NPC and/or Mr. Manion by causing losses of profits, business, reputation, and goodwill, which losses are impossible to accurately calculate.  Thus, NPC and/or Mr. Manion has/have no adequate remedy at law.

## COUNT II AGAINST BOTH DEFENDANTS

## UNFAIR COMPETITION UNDER
## SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

111.    NPC and Mr. Manion incorporate each of the assertions contained in the above Paragraphs of the Complaint as if each was set forth herein.

112.    Defendants' continued use of the NPC® service mark, including within the websites and social media accounts that they maintain and operate, is likely to cause mistake and confusion in the marketplace and to cause NPC members, customers and/or vendors to believe that Defendants' goods or services are those of NPC and/or Mr. Manion.

113.    The use by Defendants of the NPC® service mark, including within the websites and social media accounts that they maintain and operate, constitutes unfair competition under the Lanham Act.

114.    Defendants are deliberately attempting to trade upon the goodwill of NPC by selling and/or advertising and/or intending to sell and/or advertise their goods and/or services as the goods and/or services of NPC.

115.    Potential and actual NPC members, customers and/or vendors, as well as the public at large, are likely to believe, and likely to be deceived into believing, that the products and/or services offered by the Defendants or intended to be offered by the Defendants are approved, authorized and/or licensed by NPC.

116.    The conduct of Defendants constitutes fraud and deceit upon the consuming public of the United States.

117.    Said conduct has resulted and will continue to result in the loss of NPC's goodwill, and has caused and will continue to cause NPC irreparable injury.

118.     Unless enjoined by this Court, Defendants' acts will continue to irreparably damage NPC and/or Mr. Manion by causing losses of profits, business, reputation, and goodwill, which losses are impossible to accurately calculate.  Thus, NPC and/or Mr. Manion has/have no adequate remedy at law.

## COUNT III AGAINST BOTH DEFENDANTS

## PENNSYLVANIA UNFAIR COMPETITION

119.     NPC and Mr. Manion incorporate each of the assertions contained in the above Paragraphs of the Complaint as if each was set forth herein.

120.     Defendants' use of the NPC® service mark, including within the websites and social media accounts that they maintain and operate, is likely to cause mistake and confusion in the marketplace and to cause purchasers to believe that Defendants' goods and/or services are those of NPC and/or Mr. Manion.

121.     Potential and actual NPC members, consumers and/or vendors, as well as the public at large, are likely to believe, and likely to be deceived into believing, that the products and/or services offered by the Defendants or intended to be offered by the Defendants are approved, authorized and/or licensed by NPC.

122.     Defendants are therefore creating confusion between NPC products and/or services and the Defendants' products and/or services.

123.     Defendants' conduct further creates the impression that NPC is responsible or accountable for the quality of the products and/or services sold or offered for sale or intended to be sold or offered for sale by Defendants.

124.     Defendants' conduct also harms the value of the NPC® service mark and the value of NPC's reputation within the amateur bodybuilding, physique and fitness industry.

125.     Defendants' conduct as described above constitutes unfair competition in violation of the common law of the Commonwealth of Pennsylvania.

126.     Defendants committed the acts described above with notice of NPC's and/or Mr. Manion's rights and with the intent to cause confusion, mistake and deception on the part of the consuming public.

127.     Unless enjoined by this Court, Defendants' acts will continue to irreparably damage NPC and/or Mr. Manion by causing losses of profits, business, reputation, and goodwill, which losses are impossible to accurately calculate.  Thus, NPC and/or Mr. Manion has/have no adequate remedy at law.

## COUNT IV AGAINST BOTH DEFENDANTS

## UNJUST ENRICHMENT/QUANTUM MERUIT

128.     NPC and Mr. Manion incorporate each of the assertions contained in the above Paragraphs of the Complaint as if each was set forth herein.

129.     Defendants have misused and continue to misuse the NPC® service mark to derive personal profit and otherwise have been enriched as a result of the benefits and goodwill which flow from the NPC® service mark.

130.     It would be unjust for Defendants to retain the profits, gains, and other benefits that they have derived from their illegal use of the NPC® service mark.

131.     Defendants should be required to pay to NPC and/or Mr. Manion the value of the benefits they gained through the unauthorized and illegal use of the NPC® service mark.

## COUNT V AGAINST BOTH DEFENDANTS

## DILUTION UNDER FEDERAL LAW

132.    NPC and Mr. Manion incorporate each of the assertions contained in the above Paragraphs of the Complaint as if each was set forth herein.

133.    The NPC® service mark is famous.

134.    Defendants' use of the NPC® service mark has and will continue to dilute the distinctiveness of and tarnish the famous NPC® service mark in violation of the Federal Dilution Act, 15 U.S.C. § 1125(c).

## COUNT VI AGAINST BOTH DEFENDANTS

## DILUTION UNDER PENNSYLVANIA LAW

135.    NPC and Mr. Manion incorporate each of the assertions contained in the above Paragraphs of the Complaint as if each was set forth herein.

136.    Defendants' use of the NPC® service mark has and will continue to dilute the distinctiveness of and tarnish the famous NPC® service mark in violation of the anti-dilution law of the Commonwealth of Pennsylvania, 54 Pa. Cons. Stat. Ann. § 1124.

## COUNT VII AGAINST BOTH DEFENDANTS

## UNFAIR COMPETITION UNDER
## SECTION 43(d) OF THE LANHAM ACT (15 U.S.C. § 1125(d))

137.    NPC and Mr. Manion incorporate each of the assertions contained in the above Paragraphs of the Complaint as if each was set forth herein.

138.    In an attempt to unfairly compete with NPC and to steal the goodwill and value associated with NPC's and/or Mr. Manion's trademarks and service marks, including the NPC® service mark, Defendants have caused to be registered at least two infringing domain names

which use the NPC® service mark in their very web address, i.e., npcglobal.org and
npctexas.org.

139.    This practice, known as "cybersquatting," is specifically prohibited by the Anti-
Cybersquatting Consumer Protection Act ("ACPA") provisions of the Lanham Act.  *See* 15
U.S.C. § 1125(d).

140.    The NPC® service mark is distinctive and famous.

141.    The NPC® service mark is ubiquitous in the world of amateur bodybuilding,
physique and fitness competitions within the United States.

142.    The npcglobal.org and npctexas.org domain names (the "Domain Names") are
confusingly similar to the NPC® service mark and/or NPC's longstanding website, i.e.,
npcnewsonline.com.

143.    Upon information and belief, Defendants have registered and/or are using the
Domain Names with the bad faith intent to profit from said registration and/or use.

144.    Said conduct has resulted and will continue to result in the loss of NPC's
goodwill, and has caused and will continue to cause NPC irreparable injury.

145.    Unless enjoined by this Court, Defendants' acts will continue to irreparably
damage NPC and/or Mr. Manion by causing losses of profits, business, reputation, and goodwill,
which losses are impossible to accurately calculate.  Thus, NPC and/or Mr. Manion has/have no
adequate remedy at law.

## COUNT VIII AGAINST DEFENDANT TIMOTHY LEE THOMPSON

## BREACH OF FIDUCIARY DUTIES

146.    NPC and Mr. Manion incorporate each of the assertions contained in the above
Paragraphs of the Complaint as if each was set forth herein.

147.     As a member of NPC's Board of Governors and an NPC officer, Mr. Thompson owed and may continue to owe fiduciary duties to NPC, including, but not necessarily limited to, a duty of loyalty, a duty of good faith, a duty to refrain from self-dealing, and a duty of disclosure.

148.     Mr. Thompson's intentional and unlawful misconduct, as described above, clearly breached the fiduciary duties that he owed and may continue to owe NPC.

149.     As a result of Mr. Thompson's unlawful misconduct, NPC has suffered damages in an amount to be proven at the trial of this matter.

## PRAYER FOR RELIEF

WHEREFORE, NPC and Mr. Manion respectfully demand that judgment be entered in their favor and against Defendants with respect to all Counts as follows:

1.     That Defendants be adjudged to have violated 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(c), 15 U.S.C. § 1125(d), 54 Pa. Cons. Stat. Ann. § 1124, and Pennsylvania common law;

2.     That Defendants be permanently enjoined from infringing the NPC® service mark or any mark confusingly similar thereto, including through its use in domain names, websites, social media accounts, or otherwise;

3.     That Defendants be permanently enjoined from effecting assignments or transfers, or forming new entities or associations, or utilizing any other scheme or device for the purpose of circumventing or otherwise avoiding the directives of the injunction;

4.     That Defendants be permanently enjoined from manufacturing, having manufactured, selling, distributing, and/or marketing products bearing marks which use or infringe upon the NPC® service mark;

5.      That Defendants be required to recall any and all advertisements or marketing materials which use or infringe upon the NPC® service mark;

6.      That Defendants be permanently enjoined from creating, printing, and disseminating any new advertisements or marketing materials which use or infringe upon the NPC® service mark;

7.      That Defendants be required to make a verified report to the Court within thirty (30) days setting forth all actions taken by Defendants to comply with this Court's injunction and the dates of such actions;

8.      That, upon the entry of a permanent injunction, Defendants be required to provide an accounting of all sales, revenues and fees received by them for products or services marketed or sold by them (and the receipts, gross profits and expenses relating thereto) using the NPC® service mark from the date of first use by Defendants of such service mark until disassociation is complete;

9.      That NPC and/or Mr. Manion be awarded damages in the amount of Defendants' profits, gains or advantages of any kind resulting from Defendants' unfair competition;

10.      That Defendants be required to pay damages to NPC and/or Mr. Manion for injuries in excess of $75,000 sustained by NPC and/or Mr. Manion as a result of Defendants' dilution of the NPC® service mark;

11.      That all damages under the Lanham Act be trebled;

12.      That Mr. Thompson be directed to pay damages to NPC in excess of $75,000 as a result of the breach of his fiduciary duties to NPC;

13.    That Defendants be directed to pay all of NPC's and/or Mr. Manion's costs connected with this action, including reasonable attorneys' fees, filing fees and other costs as authorized by the Lanham Act; and

14.    That NPC and/or Mr. Manion are given such other and further relief as the Court may deem just and proper.


Respectfully submitted,


DATED: October 27, 2015                **BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Brian H. Simmons*
Michael L. Dever (PA ID #46194)
Brian H. Simmons (PA ID #84187)
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219
michael.dever@bipc.com
brian.simmons@bipc.com
Telephone:  (412) 562-8800
Fax:  (412) 562-1041

OF COUNSEL:

Andrew J. Cornelius (PA ID # 30213)
**ANDREW J. CORNELIUS, P.C.**
305 Mt. Lebanon Boulevard, Suite 205
Pittsburgh, PA 15234
acornelius@ajciplaw.com
Telephone:  (412) 571-9552
Fax:  (412) 571-9553